**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KLEATUS McMANUS, # 292893          *

Plaintiff          *

v          *     Civil Action No. ELH-14-3480

KRISTY BLALOCK,          *
PATRICIA G. JOHNSON,
          *
Defendants
          ***

**MEMORANDUM OPINION**

Kleatus McManus, who is a self-represented inmate in the Maryland Division of Correction ("DOC"), filed suit pursuant to U.S.C. §1983 against Kristy Blalock,[1] a substance abuse treatment program director employed by Gaudenzia, Inc., and Patricia Goins-Johnson, Warden of the Patuxent Institution ("Patuxent"). ECF 1.[2]

Blalock was employed by Gaudenzia, Inc. as a Program Director and acted as the program director for the Regimented Offender Treatment Center program at Patuxent Institution between May 1, 2014 and March 31, 2015. ECF 27-3, Affidavit of Kristy Blalock, at ¶ 1.[3] The record does not explain the relationship between Blalock's employer and Patuxent Institution. However, this court is aware that Gaudenzia is a substance abuse treatment provider that contracts with the DOC to operate substance treatment programs within

---

[1] McManus spelled defendant Blalock's first name as "Cristy" in the complaint. ECF 1. The Clerk will amend the docket to reflect the correct spelling.

[2] On January 14, 2015, McManus was transferred to Jessup Correctional Institution, where he is presently housed. ECF 1; ECF 20-3 at 1; *see also* http://www.dpscs.state.md.us/inmate/search.do?searchType=detail&id=84938.

[3] Citations to pleadings and exhibits correspond to the pagination on the court's electronic docket, which is not necessarily the same as the page number on the document.

correctional facilities in Maryland. *See Williams v Gaudenzia, Inc., et al.,* Civil Action No. L-08-2612 (ECF 26 at 1 n.1), 2009 WL 2426250  (D. Md. August 4, 2009).

Goins-Johnson and Blalock have filed separate motions to dismiss, or in the alternative, for summary judgment, with affidavits and verified exhibits.  ECF 20 (Goins-Johnson); ECF 27 (Blalock).  McManus has filed oppositions with supporting documents. ECF 22; ECF 29.[4] McManus also filed a motion for appointment of counsel. ECF 30.  The motions are ready for disposition, as no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014).

As to McManus's request for an attorney, he has adequately presented his claims and replied to defendants' dispositive motions.   He neither demonstrates extraordinary circumstances to warrant appointment of counsel nor particularizes why unnamed documents, witnesses, and records were necessary to craft his reply.  *Id*. at 2.  Accordingly, his motion to appoint counsel will be denied.

And, for the reasons that follow, I will grant defendants' dispositive motions. ECF 20; ECF 27.  Summary judgment will be granted in favor of Blalock and Goins-Johnson as to plaintiff's due process claims. The remaining claims against defendants will be dismissed, with prejudice.

## I.    FACTUAL BACKGROUND

### A.  McManus's Claims

McManus filed suit on November 5, 2014.  He claims that defendants violated his right to due process by improperly terminating his participation in the Regimented Offender Treatment Center ("ROTC"), a substance abuse treatment program that is offered to eligible

---

[4] Pursuant to *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), McManus was notified that he was entitled to file an opposition response and supporting materials.  ECF 21; ECF 28.

DOC inmates.  ECF 27-3 at 2, ¶ 2.

McManus avers that he was ordered to complete the program by a Parole Commissioner. ECF 1 at 3. He claims that he signed a contract on June 3, 2014, "to undergo" a four-month treatment program at "Gaudenzia/Patuxent Institution," and claims he completed treatment on September 19, 2014. *Id.*

McManus was required to make-up sixteen days for which he was absent from the program.  Therefore, his graduation date was moved to October 27, 2014.  *Id.*  This, he claims, constituted a "breach of contract" because Gaudenzia guidelines provide that the only way to be "held back" in the program is to be placed on a "behavioral contract," which he was not, and his extension exceeded his sixteen days of absence.[5]  ECF 1 at 3.

McManus also asserts violations of his rights under the Equal Protection Clause, the First Amendment, and the Eighth Amendment. *Id.* at 4.  He complains that the living conditions in the program subjected him to cruel and unusual punishment, in violation of his rights under the Eighth Amendment.  In addition, he maintains that he was punished for asking a question about his living conditions, in violation of the First Amendment.  He also asserts that upon entering the ROTC program, the inmate is no longer subject to DOC rules. *Id.* (stating that "[o]nce a inmate [sic] signs the contract They [sic] are no longer a inmates [sic] of DOC, they are members of Gaudenzia that is the reason for signing the contract and the only way that Patuxent can interven[e] with the program if theres [sic] a security matter.").

_____

[5] McManus may be referring to a provision in Gaudenzia's Member Manual. ECF 27-5 at 11-12, II.5. (discussing a thirty-day behavioral contract). The Manual describes program participants as members of a therapeutic community and refers to them as "members." ECF 20-3 at 13.  It lists placement on a behavioral contract as one of several alternatives available if an inmate violates program rules. ECF 27-5 at 11-12, II.5. The Manual emphasizes that terminations from treatment in the ROTC program "are joint decisions of the Department of Public Safety and Correctional Services (DPSCS) and Gaudenzia staff." *Id.* at 11 (emphasis in original.).

As relief, McManus asks to be awarded his ROTC graduation certificate. ECF 1 at 3. In his opposition to Blalock's dispositive motion, he also asks for $10,000 in damages. ECF 22 at 2.

## B. PAROLE HEARING

On May 2, 2014, prior to entering the ROTC program, McManus appeared before Maryland Parole Commissioner David Law for a parole hearing. ECF 20-4.   In a "Recommendation/Decision" of May 2, 2014 (ECF 20-4), Law recommended a parole rehearing for McManus at a later time. *Id.* at 2-3.   Law's recommendation was based on findings that McManus "has an extensive criminal record[6] and has made a poor adjustment to incarceration, re-hear will allow inmate opportunity to improve adjustment, earn a ged [sic] and complete drug treatment." *Id.*

The parole report provides for two categories: "contingencies to be met prior to parole," and "rehearing recommendations." *Id.* McManus' rehearing recommendations were that he pursue a structured substance abuse program, a GED, and an infraction-free record. *Id.*   No contingencies for parole are listed. Of import here, a structured substance abuse treatment program is not listed as a contingency to be met prior to parole.  *Id.*  Rather, it is listed as a re-hearing recommendation.  ECF 20-4 at 2.

## C. ROTC PROGRAM

The Patuxent ROTC program consists of four months of continuous treatment. ECF 27-3, Decl. of Kristy Blalock, ¶ 10. The program subscribes to mutual self-help and consistent involvement so that a participant can change his attitude and behavior. *Id.* at ¶¶ 9, 16, 17; ECF

---

[6]  McManus was convicted of first-degree assault and a handgun violation. ECF 27-7; *see also* http:// casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=03K99 004505&loc=55&detailLoc=K.  It appears that he is serving a 25 year sentence that began on November 9, 1999.  ECF 20-4 at 2.

27-5, Gaudenzia Member Manual, at 7.  Inmates must be recommended by the DOC for the ROTC program. ECF 27-3, ¶ 5.

At Patuxent, the ROTC program is located on Tier-B, a separate, dormitory style tier. There are one hundred beds, two group rooms, and four classrooms to foster a community-based therapy approach. ECF 27-3, ¶ 3. This housing arrangement is intended to offer treatment in a setting that feels less like a prison. *Id*. ¶ 4.  Tier-B is staffed by DOC correctional officers, with Gaudenzia treatment staff present daily from 9 a.m. to 3 p.m. *Id*. ¶¶ 18, 19.

Consistency is an integral component of community-based substance abuse therapy which requires structure, routine participation, and commitment.  ECF 27-3, ¶ 16.  Participants must review and acknowledge their understanding of the program requirements. *Id*. ¶¶ 9, 14; *see also* ECF 27-5, Gaudenzia Member Manual.  In addition, participants must sign consent to treatment forms. ECF 27-3, ¶ 14; *see also* ECF 27-4 at 2-3 (McManus's signed forms).[7]  If an inmate returns to the program after an absence of less than thirty days, the inmate is required to make up the missed time. ECF 27-3, ¶ 12.  An absence of thirty days or more is grounds for discharge from the program. *Id*. ¶ 13; *see also* ECF 27-5.

Correctional officers may issue "tickets" to program participants for disciplinary matters.  ECF 27-3, ¶ 20.[8]  If an inmate on Tier-B receives a "ticket" from a correctional officer during the course of treatment in the ROTC program, the inmate is immediately removed from Tier-B. *Id*. ¶ 21. Gaudenzia employees are not involved in disciplinary proceedings other than to record an inmate's absence on case consultation forms.  *Id*. ¶ 22.

---

[7]   McManus appears to refer to his signed consent forms as his "contract" with Gaudenzia.

[8]   Infractions issued by DOC correctional officers to inmates for institutional rule violations are often called "tickets."

The Gaudenzia Member Manual enumerates three criteria for termination from the program: (1) breaking program rules, (2) violating prison rules, or (3) continued violation of "House Rules" of the therapeutic community. *Id.* As noted, the Gaudenzia Member Manual emphasizes that termination from the program is a joint decision of the Department of Public Safety and Correctional Services ("DPSCS") and Gaudenzia staff.   ECF 27-5 at 11.   "Each case is considered on its individual merits." *Id.*

**D.   Chronology of Plaintiff's Absences**

McManus was moved from B-Tier three times during the course of his ROTC treatment: 1) July 10, 2014 through July 17, 2014. *See* ECF 27-6, Case Consultation Form dated July 18, 2014; 2) August 26, 2014 through September 18, 2014. *See* ECF 27-8, Case Consultation Form dated September 18, 2014; and 3) October 2, 2014. ECF 27-9. *See* Case Consultation Form dated October 2, 2014; *see also* ECF 20-3 at 28-31.   These moves are discussed below.

**1. First Removal**

On July 10, 2014 through July 17, 2014, McManus was removed from the treatment tier because he received a ticket and was placed in disciplinary segregation. The reason for the ticket is not apparent in the record, but his absence from the tier on this basis is undisputed.

On July 17, 2014, McManus was informed by Gaudenzia staff that he was required to make up the seven days he was absent from the program. ECF 27-6. He agreed to make up the days*,* and was notified that ROTC policy permits a member to be off the tier for no more than 30 days before being discharged. *Id.*

**2. Second Removal**

On August 26, 2014, McManus was removed from the treatment tier and placed on cell

restriction. ECF 27-7.  On September 18, 2014, McManus returned to B-Tier and was informed that he was responsible for making up sixteen days of absences due to his August removal, as well as the seven days he missed for his previous removal. ECF 27-8.  His completion date was reset for October 29, 2014.

McManus's second removal was based on a notice of rule infraction issued on August 25, 2014, which states that Sergeant Dawn Halsey was "pulling some video footage" in the B-wing when Officer T. Brown informed Sergeant D.V. Johnson and Sergeant Halsey that McManus was trying to look at the video footage. Officer Brown gave McManus a direct order to leave the area, but McManus refused. ECF 20-6, Notice of Inmate Rule Violation, at 3. Sergeant Brown then gave McManus several direct orders to leave the area or he would take him off B-wing and give him a ticket. *Id.*  McManus again refused to comply, stating: "It's my day room time and I can stand anywhere for recreation. And I don't care about a ticket." *Id.* McManus was issued a notice of rule violation for Rule #312 (interfering with or resisting performance of staff duties to include a search of a person, item, area, or location); Rule #400 (disobeying an order); and Rule #402 (presence in a location without authorization, refusing to follow an order).

On September 12, 2014, McManus agreed to an informal disposition of the Rule #400 and Rule #402 violations. He pleaded guilty to violating rules #400 and #402, and was sanctioned with loss of commissary privileges for thirty days.  ECF 20-6 at 7-8.  He pleaded not guilty to violating Rule #312. *Id.*  Hearing Officer Kimberly Stewart dismissed the Rule #312 violation.  *Id.* at 7.  Stewart wrote in the hearing report, *id.* at 8:

> The defendant accepted an ID [informal disposition] for rule 400 and 402 with no Commissary.  While I think the defendant needs to be accountable for his actions, I do not believe this incident should cause his removal from his drug treatment program.  He was warned that any future actions will.

On October 1, 2014, Warden Goins-Johnson affirmed Stewart's decision.  She also imposed additional sanctions of a sixty-day cell restriction and a sixty-day loss of visiting privileges, beginning October 1, 2014.  ECF 20-6 at 12-13.

McManus filed a grievance with the Inmate Grievance Office ("IGO") on October 24, 2014.  IGO #20142301.[9] Scott Oakley, Executive Director of the IGO, describes the grievance as an appeal from the "finding that inmate McManus was guilty of violating inmate rules 400 (disobeying an order) and 402 (being in an unauthorized location)…."  ECF 20-7 at 2-3 ¶ 3.a. The IGO referred the grievance to the Maryland Office of Administrative Hearings for a hearing scheduled for January 29, 2015.  *Id.*  at 3.

On January 29, 2015, Randy Watson, Director of Programs and Services for the DPSCS, sent a memorandum to John Wolfe, Warden of the Jessup Correctional Institution,[10] reversing and vacating the disposition and sanctions imposed in connection with McManus's August 25, 2014, rule violations.  ECF 20-8.  Watson's memorandum stated, in part, *id.* at 2:

> At his hearing on September 12, 2014, hearing officer (HO) Kimberly Stewart dismissed rule 312 and offered inmate McManus and [sic] informal disposition for rules 400 and 402. Inmate McManus accepted, on the express condition that he not receive cell restriction so as not to be removed from the Regimented Offender Treatment Center (ROTC) program. HO Stewart agreed and imposed a sanction of 30 days no commissary.
>
> Subsequently, on October 1, 2014, Warden Goins-Johnson conducted the

---

[9]  A prisoner may appeal a hearing officer's decision or sanctions to the Warden and the Inmate Grievance Office. *See* COMAR 12.02.27.33 and 12.07.01.05. If the prisoner's appeal to the Warden is denied or no response is received, a grievance may be filed. Grievances are reviewed preliminarily by the IGO. *See* Md. Code, Corr. Serv. Art. § 10-207; COMAR 12.07.01.06A. If the IGO determines a hearing is necessary, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Corr. Serv. § 10-208(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute.

[10] McManus was transferred from Patuxent Institution to Jessup Correctional Institution on January 15, 2015.

Warden's review of HO Stewart's decision and added the sanctions of 60 days cell restriction and 60 days no visits. Inmate McManus was removed from the ROTC housing unit the next day. Although COMAR 12.02.27.31(B)(2)(b)[11] specifically allows the Warden to add informal sanctions upon review, inmate McManus' unique set of circumstances render this procedure fundamentally unfair. A review of the audio record clearly indicates that inmate McManus would not have waived his right to a hearing had he known that his decision to do so would remove him from ROTC.

As the Deputy Secretary for Operation's designee for matters related to the Department's Disciplinary process, my authority under COMAR 12.02.27.34,[12] and in consideration of the aforementioned findings, I, hereby reverse the informal disposition for rules 400 and 402 and vacate all sanctions imposed. No new hearing is ordered. I cannot order that inmate McManus be placed in another drug treatment program at this time because he has since received two other convictions for rule violations and is scheduled to be on segregation until February 21, 2015. I, therefore, direct that he be reconsidered for drug treatment placement should he become eligible again in the future. Further, inmate McManus shall **NOT** receive a notice of rule violation related to his removal from the mandatory[13] ROTC program. (Emphasis in original).

On April 29, 2015, Oakley filed a second declaration, attesting that he was unable to ascertain from the record whether McManus's hearing was held on January 29, 2015, but the file showed McManus withdrew the grievance on February 5, 2015. ECF 20-7 at 4-5, ¶ 3. An "Exit Document" dated February 5, 2015, which was filed by the Office of Administrative Hearings, showed the grievance was withdrawn. *Id*. Oakley attests that this constituted the final

---

[11]  COMAR 12.02.27.31 (B)(2)(b), Post Hearing Procedures, Warden's Review provides: "A warden or a designee conducting a review under this regulation, and without explanation, may  impose an additional informal or alternative sanction regardless of sanctions and period imposed by the hearing officer."

[12]  COMAR 12.02.27.34 authorizes the Commissioner or a designee, *inter alia*, to modify or vacate a sanction or reverse a disciplinary decision.

[13]  The "mandatory" nature of the ROTC program is unclear. Watson provides no legal support for his assertion, and none is apparent in the record. The Gaudenzia "Member Bill of Rights" that McManus signed upon entering the program states that he has "the right to refuse treatment to the extent provided by law." ECF 27-4 at 3.  The Gaudenzia Member Manual also states that failure to complete treatment as a result of a violation of Gaudenzia or DOC rules may result in a DOC infraction for failure to complete mandatory remediation. ECF 27-5 at 12, II.7.

administrative disposition of this grievance. *Id.*

### 3. Third Removal

On October 2, 2014, McManus was removed from the treatment tier and notified that he would remain in the program pending further decision. ECF 27-9. The record does not state the reasons for the removal. However, McManus does not dispute his third removal.

### 4. Termination from the ROTC Program

McManus was discharged from the ROTC program on November 13, 2014. Blalock, determined that McManus had attended a total of sixty-two days of programming, approximately half the time required to acquire the skills needed. ECF 27-10 at 6.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint. *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a

complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ____ U.S. ____, 135 S.Ct. 346 (2014) (per curiam). But, the rule demands more than bald accusations or mere speculation. *Twombly,* 550 U.S. at 555; *see Painter's Mill Grille, LLC*, 716 F.3d at 350. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ...[the] actual proof of those facts is improbable and...recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556.  In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011). Nonetheless, the complaint must contain sufficient factual detail to "nudge [ ] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

A court's consideration of a Rule 12(b)(6) motion is generally confined to facts alleged in the operative pleading. Ordinarily, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (recognized in *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) as abrogated on other grounds by *Reed v. Town of Gilbert, Ariz.*, ____ U.S. ____, 135 S.Ct. 2218 (2015)). However, a court may properly consider documents attached or incorporated into the complaint, as well as documents attached to the defendant's motion, "'so

long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief....'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

### B.  Motion for Summary Judgment

As noted, defendants have moved to dismiss or for summary judgment.  A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to

dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th. Cir. 2007).   However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).   If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Conversely, a court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the

parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th. Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs.*, LLC, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th

14

Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

McManus has not filed an affidavit under Rule 56(d).   However, he has filed oppositions with supporting attachments to defendants' dispositive motions.   I am satisfied that it is appropriate to address his due process claims in the context of summary judgment, because this will facilitate disposition of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme

Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

However, to defeat summary judgment, conflicting evidence must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because McManus is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation*, 477 U.S. at 323–24)).

## III.    DISCUSSION

Goins-Johnson and Blalock maintain that McManus failed to allege or demonstrate a deprivation of a constitutional right. In their view, they are entitled to dismissal or summary judgment in their favor, as a matter of law. Plaintiff disagrees.

### A. Due Process

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of ... liberty ... without due process of law." To bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). A

17

plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983.

In the prison context there are two different types of constitutionally protected liberty interests that may be created by government action. The first is created when there is a state created entitlement to an early release from incarceration. *Board of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

### 1. Disciplinary Hearing and Sanctions

The basic due process standards applicable to a prison disciplinary proceeding are set forth in *Wolff*, 418 U.S. at 556.  As the *Wolff* Court explained, although prisoners "may not be deprived of life, liberty, or property without due process of law," their due process rights remain "subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id*.   Accordingly, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id*.

Although sentence and diminution credit calculation disputes generally are issues of state law and do not give rise to a federal question, the Supreme Court has held that when a State creates a right to good time credits, due process requires that a prisoner's right should not be "arbitrarily abrogated."  *Id*. at 557.  Once a prisoner has earned good time credits under a state statute that awards mandatory sentence reductions for good behavior, he possesses a liberty interest in a reduced sentence, which cannot be revoked in the absence of minimum procedural guarantees. *Id*. at 556–57.

18

In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; (4) an impartial decision-maker; and (5) a written statement of the evidence relied on and the reasons for taking any disciplinary action. *See Wolff*, 418 U.S. at 564-571. Inmates are not entitled to a right of confrontation, nor are they guaranteed a right to counsel. *Id*. at 567-70; *see Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 505-06 (4th Cir. 2004). Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). The hearing officer's decision must contain a written statement of the evidence relied upon. *See Baxter*, 425 U.S. at 323 n. 5.

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990).

To the extent McManus alleges that he was denied due process as to the sanctions imposed on him for his rule violations on August 25, 2014, the sanctions were vacated and reversed. Assuming, *arguendo*, that the disciplinary hearing was improper, no good conduct credits were lost to trigger due process protections, and the results of the disciplinary hearing were vacated. If there was error, the error was corrected and remediated. *See Morisssette v.*

*Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (no denial of due process if the error is corrected) (citing *Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991)); *Young v. Hoffman,* 970 F.2d 1154, 1156 (2d Cir. 1992) ("administrative reversal constituted part of the due process protection [inmate] received, and it cured any procedural defect that may have occurred"). Insofar as McManus faults Goins-Johnson for imposing additional sanctions that contributed to his termination from ROTC, her decision was set aside; McManus lost no good conduct credits and no liberty interest was infringed.  He was not deprived of due process.

### 2.  Parole

The Constitution does not create a protected liberty interest in the expectation of early release on parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Jago v. Van Curen,* 454 U.S. 14, 18  (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest). Because the decision whether to grant parole is discretionary, "a prisoner cannot claim entitlement and therefore a liberty interest in the parole release." *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) (en banc); *see also Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996).  "It is therefore axiomatic that because ... prisoners have no protected liberty interest in parole they cannot mount a challenge against a state parole review procedure on procedural (or substantive) Due Process grounds." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir.1997).

McManus has no due process right to parole because Maryland law "does not create a legitimate expectation of parole release." *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988) (district court properly concluded that Maryland inmate had no due process right to a

parole hearing). The authority to grant parole is vested in the discretion of the Parole Commission. Corr. Serv. §§ 7-205(a)(1), 7-703, 7-305; COMAR §12.08.01.18. Absent a protected liberty interest in parole, no process is due. *See Henderson v. Simms*, 223 F.3d 267, 274–5 (4th Cir. 2000). Absent a liberty interest, due process is not implicated.

Here, McManus was provided a parole review and advised in writing of the reasons for a need for a rehearing. It was recommended that he pursue substance abuse treatment, among other courses of action, prior to a parole rehearing. The Parole Commissioner made no representation that McManus would be paroled if he successfully completed a substance abuse program or that his eligibility for parole was contingent upon its successful completion. ECF 20-4 at 2. In sum, there was no violation of due process.

### 3. Programs

Inmates have no constitutional right to participate in an educational or rehabilitative program. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Bowring v. Godwin*, 551 F.2d 44, 48 n. 2 (4th Cir. 1977); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) ("Prisoner classification and eligibility for rehabilitation programs ... are not directly subject to 'due process' protections") (citing *Moody*).

McManus has no constitutionally protected liberty interest in receiving substance abuse treatment. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court explained:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84 (citations omitted).

Whether confinement conditions are atypical and substantially harsh "in relation to the

ordinary incidents of prison life" is a "necessarily ... fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502, 503 (4th Cir.1997); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).  Against this background, federal courts must consider a correctional system's need to maintain order, discipline, and control. *See Sandin v. Conner*, 515 U.S. at 483-84 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"); *see also Wolff*, 418 U.S. at 558–62.

Under *Sandin's* analytical framework, an inmate's termination from a substance abuse program for failure to meet treatment requirements is neither atypical nor amounts to a significant hardship in relation to the ordinary incidents of prison life, and thus, no constitutionally protected liberty interest was abridged. Similarly, imposition of a sixty-day cell restriction or loss of visitation for prison rule violations is not atypical or a significant deprivation. Notably, McManus does not claim his termination was atypical or amounted to significant hardship.

Moreover, no good time credits were revoked.  Indeed, McManus's exhibits show that he earned education and special program credits for the time he spent in the ROTC program. ECF 29-2 at 3.  The inability to earn credits does not implicate a liberty interest that arises directly under the Constitution. *See Meachum v. Fano*, 427 U.S. 215, 225–26 (1976); *see also Wolff* , 418 U.S. at 557. Although prisoners are afforded due process protections when the loss of actual, earned, good-time credits is at issue, *Wolff*, 418 U.S. 539, the Supreme Court has afforded no such rights when the opportunity to earn such credit is at issue.  As no liberty interest was implicated, Blalock's decision to terminate McManus from the program did not violate his right to due process.

For these reasons, viewing the evidence in the light most favorable to McManus, and

drawing all inferences in his favor, he has not sustained his burden to show there are genuine issues of material fact for trial.   Accordingly, I will grant summary judgment in favor of defendants as to the due process claims raised against them.

## B.  Other Constitutional Claims

McManus also claims violations of his rights under the Equal Protection Clause, the First Amendment, and the Eighth Amendment. *Id.* at 4.  McManus claims he was subjected to cruel and unusual punishment due to the treatment he received and the living conditions of the program. *Id.* He also claims he was punished for exercising his right to freedom of speech; he asserts that he did not violate any rule, but was punished for asking a question about a living condition.   *Id.* McManus, however, provides no facts to support these bald and conclusory allegations.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In this case, McManus fails to identify any similarly situated inmates who were treated differently so as to set forth an Equal Protection claim.

As to his Eighth Amendment claim of unconstitutional conditions of confinement, McManus does not identify what conditions were constitutionally deficient or how they caused him injury.  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Of course, prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see Wilkinson v. Austin*, 545 U.S. 209 (2005). Here, McManus fails to identify the purportedly unconstitutional conditions, in what manner they were atypical or unduly harsh, and how they caused him injury.

As to his claim of a First Amendment violation, McManus fails to: 1) explain how his comment amounted to constitutionally protected speech; 2) allege how the purported retaliation adversely affected his protected speech; and 3) or a causal relationship between the protected speech and the retaliation. *See Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (setting forth elements necessary to bring a retaliation claim under 42 U.S.C. §1983) (quoting *Suarez Corp Indus. v. McGraw*, 202 F.3d 676, 685-86).[14]

Moreover, McManus fails to specify Blalock's participation in any of the matters averred.  His sole reference to Goins-Johnson concerning his First Amendment rights is vague and unsupported by fact. For these reasons, these claims are unavailing.

Given the dearth of facts, these conclusory assertions fail to state a claim to relief that is plausible on its face, even when viewed in the light most favorable to McManus.  Accordingly, these claims will be dismissed.

## IV.    CONCLUSION

Goins-Johnson's motion to dismiss or, in the alternative, motion for summary judgment (ECF 20) IS GRANTED.  Summary judgment will be entered in favor of Goins-Johnson as to all due process claims.   The remaining claims against Goins-Johnson will be dismissed.

---

[14]   Insofar as McManus may regard his viewing of the videotape and comments to the correctional officer which led to his "ticket" on August 25, 2014, as protected speech, he does not allege how the First Amendment was implicated.

Blalock's motion to dismiss or, in the alternative, motion for summary judgment (ECF 27) IS

GRANTED. Summary judgment will be granted in favor of Blalock as to all due process

claims.  The remaining claims against Blalock will be dismissed.

      An Order follows.


<u>December 17, 2015</u>                    _____/s/_____
Date                                    Ellen L. Hollander
                                      United States District Judge